# In the United States Court of Federal Claims

No. 17-475C
(Filed: November 6, 2018)

|  |  |
|---|---|
| TYRONE ALLEN, d/b/a X3 LOGISTICS, LLC, Plaintiff, v. THE UNITED STATES, Defendant. | Contract Disputes Act; Jurisdiction; Motion to Dismiss for Lack of Subject Matter Jurisdiction; RCFC 12(b)(1); 28 U.S.C. § 1491; Statute of Limitations; 28 U.S.C. § 2501; Interstate Commerce Act; Failure to State a Claim; RCFC 12(b)(6). |

*Joseph Blake Fellows,* Mobile, AL, for plaintiff.

*Alexander Orlando Canizares,* Civil Division, United States Department of Justice, Washington, D.C., with whom were *Chad A. Readler,* Acting Assistant Attorney General, *Robert E. Kirshman, Jr.,* Director, and *Reginald T. Blades, Jr.,* Assistant Director, for defendant. *John E. Swords,* General Litigation Branch of U.S. Army Legal Services Agency, Fort Belvoir, VA., of counsel.

## OPINION

**FIRESTONE**, *Senior Judge*

The plaintiff initially filed this action on March 31, 2017, on behalf of his corporation, X3 Logistics, LLC ("X3") seeking damages for breach of contract. The plaintiff filed an amended complaint on March 7, 2018 (ECF No. 23). According to the allegations in the amended complaint, X3 was a freight forwarder/broker and vendor of transportation services. In that capacity, X3 participated in the Department of Defense's Transport Service Provider ("TSP") program. The Military Surface Deployment and

1

Distribution Command ("SDDC"), a command within the Department of Defense, runs the TSP program and utilized X3's services for a period of time between 2008 and 2010. In 2010 the SDDC placed X3 in non-use status after it received complaints regarding X3's services. After completing various administrative procedures, SDDC decided to disqualify X3 from the TSP program on October 20, 2010 for two years.  More than five years later, on February 4, 2016, the plaintiff submitted a claim to a SDDC contracting officer under the Contract Dispute Act of 1978 ("CDA"), Pub. L. No. 95-563, 92 Stat. 2383 (codified as amended in 41 U.S.C. §§ 7101-7109), seeking payment for an alleged breach of contract arising from the SDDC's 2010 disqualification decision. The SDDC CO rejected X3's CDA claim on February 26, 2016 on the grounds that X3's disqualification from the TSP program could not give rise to a cognizable claim under the CDA. This action followed.

In this action, the plaintiff maintains that two of his claims on behalf of X3 are cognizable under the CDA and additionally that the government is liable for damages on the grounds that the SDDC violated a federal acquisition regulation when it disqualified X3 from the TSP program for two years. The plaintiff claims that the government breached a contract with the plaintiff by unlawfully violating a Commercial Bill of Lading ("CBL") X3 had with the SDDC when the SDDC placed plaintiff in nationwide non-use status in 2010 ("Claim I"). The plaintiff also claims that the government breached its duty of good faith and fair dealing in reference to the aforementioned CBL in 2010 when the SDDC personnel advised other government installations about plaintiff's disqualification from the TSP program ("Claim II"). Finally, the plaintiff

2

claims that the SDDC violated the Federal Acquisition Regulation ("FAR"), 48 C.F.R. § 9.402(b)[1] regarding disbarments when the SDDC disqualified X3 from the TSP program in 2010 for allegedly punitive reasons ("Claim III"). (ECF 26).

Pending before the court is the United States' (the "government") motion to dismiss the amended complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) or in the alternative for failure to state a claim under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").  The government argues that plaintiff's breach of contract claims are not cognizable under the CDA. The government argues that in such circumstances plaintiff can only state a breach claim or regulatory violation based on government actions taken in 2010, when X3 was disqualified from the TSP program. Because the plaintiff filed this action in 2017 more than six years after the date of the alleged breach or FAR violation, the government argues the case is time-barred under 28 U.S.C. § 2501.[2] In the alternative the government argues that plaintiff has failed to state a claim for breach of contract because participation in the TSP program does not create any contract rights and because the FAR's disbarment requirements do not apply to disqualification decisions by the SDDC. Finally, the government argues that

---

[1] The relevant FAR provisions states: "The serious nature of debarment and suspension requires that these sanctions be imposed only in the public interest for the Government's protection and not for purposes of punishment. Agencies shall impose debarment or suspension to protect the Government's interest and only for the causes and in accordance with the procedures set forth in this subpart." 48 C.F.R. § 9.402(b).

[2] "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501.

to the extent the plaintiff argues the government violated regulations, this court lacks

jurisdiction because the allegedly violated regulations are not money-mandating.

For the reasons that follow, the court finds that plaintiff's claims are not

cognizable under the CDA, and thus, the contract claims needed to be filed within six

years of when the claims accrued. Because plaintiff's breach of contract based claims

accrued in 2010 when the alleged contract violation took place, the claims are time-

barred. Furthermore, to the extent that the plaintiff's claims may be based on FAR

regulations, this court lacks subject matter jurisdiction because the underlying statutes are

not money-mandating. Accordingly, the government's motion to dismiss for lack of

jurisdiction is **GRANTED**.

## I.     BACKGROUND

### A.     Regulatory Background To The TSP Program

In order to become an approved TSP for the Department of Defense ("DOD"), the

TSP must be screened by the DOD. Military Freight Traffic Unified Rules Publication

("MFTURP")-1(A)(II)(A)(1). Upon passing the screening, an approved TSP receives a

welcome letter explaining how to register online in the Freight Carrier Registration

Program ("FCRP") and the Central Contractor Register. MFTURP-1(A)(II)(A)(2). After

registration, an approved TSP is eligible to receive bill of lading contracts for moving

cargo.[3] In order to receive a contract to move cargo, an approved TSP must submit

---

[3] Bill of lading is defined in the applicable regulations as follows: "A contract for carriage of
cargo made with a carrier that also operates as a receipt of the goods and documentary evidence
of title to the goods. A common transportation term for the basic agreement that underlies
shipment of goods. A document issued by a carrier to a shipper, listing and acknowledging

tenders. Based on the submitted tenders, a TSP may be selected to receive a shipment

award where the TSP "shall be required to move and accept cargo under a non-negotiable

standardized DOD generated [CBL] that conforms to the Defense Transportation

Regulation (DTR) 4500.94 Part II, Cargo Movement, Chapter 206 and the U.S. Federal

Bill of Lading Act." MFTURP-1(A)(II)(B)(4).

     If issues arise with the TSP's performance, the SDDC has regulations "governing

disqualification[4] and non-use[5] of [TSPs] . . . contracting with SDDC for transportation or

storage of . . .  DOD sponsored freight or personal property." Military Surface

Deployment and Distribution Command Regulation ("SDDCR") 15-1(1). In order to

disqualify a TSP or place a TSP in nonuse, the following procedures must be followed.

First, upon receiving a recommendation for disqualification,[6] the "appropriate SDDC

office will review the recommendation and related facts to determine if a [Transportation

Service Provider Review Board ("TRB")] should be convened to ascertain if

disqualification is needed to protect the Government's interests." *Id.* 15-1(5)(a). Second,

---

receipt of goods for transport and specifying terms of delivery. For government traffic, this term
is used interchangeably with "Government Bill of Lading (GBL)" or "Commercial Bill of
Lading (CBL)". The Bill of Lading is the primary document used to contract for transportation
and related services from commercial TSP, including freight forwarders." MFTURP-1 at App. D
§ J.

[4] Under the regulations, a disqualification is the "act by HQ SDDC of excluding a TSP or TSP
employee from participating in DOD programs." SDDCR 15-1 at App. E. A disqualification
"may be issued when a rule or regulation is violated on a shipment, or shipments, which warrants
a performance action greater than non-use, or when a TSP repeatedly violates any provision,
rule, or regulation." *Id.*

[5] Nonuse is the "act of temporarily suspending a TSP from all or specified parts of DOD
transportation programs." SDDCR 15-1 at App. E.

[6] Recommendations can come from a Transportation Officer, "Port Commander, SDDC
representative, military headquarters service representative, Federal agency, or other source (i.e.
claims office, Regional Storage Management Office [RSMO], TSPs, etc." *Id.* 15-1(5)(a).

in cases where a TRB is convened, "SDDC will forward to the TSP a written notice (notification letter) of a TRB hearing." *Id.* 15-1(5)(b). Third, there will be a TRB hearing and a determination. In making the determination, the "TRB, in its discretion, will consider relevant information." *Id.* 15-1(6)(e)(3). If "the TRB finds that any allegation in the notification letter is supported by a preponderance of the evidence" the TRB can disqualify "the TSP for a designated period of time." *Id.* 15-1(6)(e)(4)(c).[7]

If a TSP is dissatisfied by the TRB's decision it "may appeal a TRB decision within 15 calendar days from the date of receipt of the TRB decision letter." *Id.* 15-1(9)(a). Under the regulations, the "determination to grant or deny an appeal will be considered administratively final." *Id.* 15-1(9)(d).

### B.    Factual Background

On October 28, 2008, X3 was approved as a freight forwarder/broker and vendor of transportation services, or TSP, for the SDDC on October 28, 2008. Pl. Am. Compl. ¶ 8.  X3 served as a TSP from that date until February 2010. As a TSP, plaintiff received CBLs for shipment orders. These CBLs are the only contracts that plaintiff alleges exist between the plaintiff and SDDC.

By February, 2010, SDDC received complaints based on three specific circumstances involving delayed shipments. Def.'s Mot. to Dismiss, Ex. 7. For example, one complaint stated that X3 had delivered F-16 targeting pods 15 days late and "falsely entered a PowerTrack delivery day 19 August 2010 (which was the pickup date) allowing

---

[7] The TRB can also choose to "suspend for a stated period of time any part of a disqualification with or without probationary conditions." *Id.* 15-(6)(e)(4)(c)(iii).

payment." *Id*. On February 8, 2010, the traffic management specialist for Defense

Contract Management Agency ("DCMA") in Huntsville sent an email to DOD's DCMA

Director and all DCMA transportation division employees nationwide requesting that

SDDC "discontinue using [X3] immediately" and that "SDDC is in the process of placing

[X3] in non-use nationwide." Pl.'s Mot. for Summ. J., Ex. 1 (ECF No. 29-1 at 6).

On March 5, 2010, the plaintiff received a letter notifying him that SDDC was

"placing [X3] in nationwide nonuse status immediately." Def.'s Reply, Ex. 9 (ECF No.

31-1 at 1). The letter further notified the plaintiff that a TRB had been established to

decide what further action to take in response to the aforementioned complaints. On April

23, 2010, after the hearing, SDDC sent the TRB's decision to the plaintiff. Under the

TRB's decision X3 was disqualified nationwide for two years, but the TRB stayed the

disqualification pending a 180 day probationary period where X3 was required to meet

certain conditions. Pl. Compl., Ex. 7 (ECF No. 1 at 68). The TRB decision stated that the

decision was final unless [X3] appealed within "15 calendar days from the date of this

letter." *Id.* (ECF No. 1 at 69). The plaintiff did not file an appeal of that decision.

On September 6, 2010, X3 sent SDDC a request asking to be removed from the

DOD approved carrier list. On September 23, 2010 SDDC accepted the request. Pl.

Compl., Ex. 7 (ECF No. 1 at 71). In accepting the request the SDDC noted that X3 had

failed to satisfy the probationary period requirements as set forth in the TRB's April 24,

2010 decision. *Id.* On October 20, 2010, after the TRB convened to discuss the X3's

failure to satisfy the probationary period requirements, the TRB issued a letter to plaintiff

stating that X3 would be disqualified for two years. Pl. Compl., Ex. 7 (ECF No. 1 at 73).[8]

This second letter informed plaintiff that the plaintiff again had 15 days to submit an

appeal. What followed the October 20, 2018 decision was a complex administrative

history. This history can be summarized as follows.

The plaintiff sent an appeal challenging the TRB's two year disqualification. On

December 21, 2010, SDDC responded to the plaintiff's appeal stating that "[w]ithout

addressing the merits of your appeal, because it was not submitted within the time period

specified in the Notice of Vacation letter and in SDDC regulations 15-1, paragraph 11,

your appeal is denied." Pl. Compl. Ex. 9 (ECF No. 1 at 78). However, SDDC stated "if

you believe your appeal was submitted within the required time period, please resubmit

your appeal and include evidence to demonstrate your appeal was timely filed with

SDDC." *Id.* After the plaintiff attempted to appeal SDDC's denial of the its appeal, on

May 4, 2011 SDDC responded that information plaintiff provided was "clearly outside

the permissible time frame for submitting an appeal." Def.'s Reply, Ex. 11 (ECF No. 31-

1 at 41). This decision was reaffirmed by the SDDC on May 3, 2012. Def.'s Mot. to

Dismiss, Ex. 5.[9] The SDDC further concluded on May 3, 2012 that the plaintiff's "appeal

---

[8] "The Board found that you and your company failed to satisfy all the conditions set forth in the decision letter." *Id.* "This decision is final unless [X3] appeals. If you decide to appeal, you must do so in writing within 15 calendar days of receipt of this letter." *Id.* (ECF No. 1 at 74).
[9] The facts also show that SDDC opened an internal investigation regarding some of the plaintiff's allegations of misconduct which concluded on October 7, 2011 when SDDC sent the plaintiff an email stating that "SDDC personnel may not have followed SDDC guidance" but that "their actions did not affect [X3]'s earlier performance issues and business practices, neither did they inappropriately influence SDDC customers, nor taint the TSP review process." Pl.'s Mot. for Summ. J., Ex. 2 (ECF No. 29-1 at 13).

does not adequately respond to the findings of the TRB" and denied the "appeal on both procedural and factual grounds." *Id.*

Just over five years after the original disqualification decision, on February 4, 2016, plaintiff submitted a request for "Decision Final" to a contracting officer at SDDC. The request stated "REQUEST FOR DECISION FINAL PURSUANT TO CONTRACT DISPUTE ACT TITLE 41 § 48 CFR 33.211(1)(2)(3)(4) & 48 CFR part 9, subpart 9.402." Pl.'s Mot. for Summ. J., Ex. 4 (ECF No. 29-1 at 20). The request included seven claims. *Id.* Plaintiff alleged violations of 41 C.F.R. § 102-117.295[10]; 48 C.F.R. § 9.407-3(c)[11]; SDDC Regulation No. 15-1(7)[12]; 48 C.F.R. § 9.407-4[13]; 48 C.F.R. § 9.407-3(4)(e)(1)(2)[14]; and SDDC Regulation No. 15-1(8)(d)(2). *Id.*

---

[10] "(a) The transportation officer may place a TSP in temporary nonuse for a period not to exceed 90 days. (b) The serious nature of suspension and debarment requires that these sanctions be imposed only in the public interest for the Government's protection and not for the purposes of punishment. Only the agency head or his/her designee may suspend or debar a TSP." 41 C.F.R. § 102-117.295.

[11] "Notice of suspension. When a contractor and any specifically named affiliated are suspended, they shall be immediately advised by certified mail. . ." 48 C.F.R. § 9.407-3(c).

[12] "TSP Notification of Disqualification Determination. SDDC will notify the TSP of the TRB decision by certified mail, express air carrier, or similar means with receipt verification. The notice will specify the reasons for the TRB decision and will specifically describe the period and extent of disqualification, if any. The TSP will be notified of the TRB decision in a timely manner, normally within 15 calendar days of the TRB hearing." SDDC Regulation No. 15-1(7).

[13] "Period of Suspension. (a) Suspension shall be for a temporary period pending the completion of investigation and any ensuing legal proceedings, unless sooner terminated by the suspending official or as provided in this subsection." 48 C.F.R. § 9.407-4.

[14] "(1) If the contractor enters into an administrative agreement with the Government in order to resolve a suspension proceeding, the suspending official shall access the website . . . and enter the requested information. (2) The suspending official is responsible for the timely submission, within 3 working days, and accuracy of the documentation regarding the administrative agreement." 48 C.F.R. § 9.407-3(e)(1-2).

On February 26, 2016, SDDC issued a response:

> [SDDC] has received your letter of February 4, 2016 that purports to request a "decision final" under the Contract Disputes Act (CDA), 41 USC Chapter 71. You claim to have been wrongfully placed into a non-use status for further transport of military cargo, resulting in a loss of revenue for your company.
>
> SDDC cannot offer a final decision pursuant to the provisions of the CDA, as this is not a matter that falls within the purview of that Act. Your claim to have been wrongfully denied business due to operation of administrative program rules is not a contractual matter. It would appear that the CDA is not the right vehicle under which to bring a claim. Additionally, "potential lost profits" is not a dispute that falls within any of the areas of the CDA as detailed in the Federal Acquisition Regulation, Subpart 33.202.
>
> In short, the matter at hand is not a contractual matter and does not fall within the purview of the CDA. This is not a "final decision" under the CDA, because the CDA does not apply. I hope this clarifies our position.

Def.'s Mot. to Dismiss, Ex. 3.

### C.     Procedural History

Plaintiff's initial complaint before this court was filed *pro se* on behalf of himself, doing business as X3, on March 31, 2017. (ECF No. 1).  On May 26, 2017, the court issued an order directing plaintiff to obtain counsel on the grounds that X3 as a corporation must be represented by counsel according to RCFC 83.1(a)(3)[15] and 83.1(c)(1)[16] (ECF No. 6). On March 7, 2018, the plaintiff filed an amended complaint with new counsel. (ECF No. 23). On April 11, 2018, the government filed a motion to

---

[15] "An individual who is not an attorney may represent oneself or a member of one's immediate family, but may not represent a corporation, an entity, or any other person in any proceeding before this court." RCFC 83.1(a)(3).

[16] A party "must be represented by an attorney (not a firm) admitted to practice before this court." RCFC 83.1(c)(1).

dismiss plaintiff's complaint. (ECF No. 26). Plaintiff filed a motion for summary

judgment on May 30, 2018. (ECF No. 29). Plaintiff filed a motion for default judgement

on July 11, 2018. (ECF No. 32). Briefings were completed on July 31, 2018. The court

found that oral argument was not necessary.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Standards of Review

"Whether this Court has subject matter jurisdiction is a threshold matter, and if no

jurisdiction exists, the court must order dismissal without proceeding further." *Vanquish*

*Worldwide, LLC v. United States*, 134 Fed. Cl. 72, 76 (2017) (citing *PODS, Inc. v. Porta*

*Stor. Inc.*, 484 F.3d 1359, 1365 (Fed. Cir. 2007)).  Under the Tucker Act, an action may

be maintained in this court only if it is "founded either upon the Constitution, or any Act

of Congress or any regulation of an executive department, or upon any express or implied

contract with the United States, or for liquidated or unliquidated damages in cases not

sounding in tort." 28 U.S.C. § 1491(a)(1). A plaintiff seeking to litigate in the Court of

Federal Claims "bears the burden of establishing subject-matter jurisdiction by a

preponderance of the evidence." *Hopi Tribe v. United States*, 782 F.3d 662, 666 (Fed.

Cir. 2015) (quoting *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327

(Fed. Cir. 2010)).  Where, as here, the government has moved to dismiss the claims on

jurisdictional grounds, including that the case is barred by the statute of limitations, "the

factual allegations in the complaint are not controlling and only uncontroverted factual

allegations are accepted as true." *Shoshone Indian Tribe of Wind River Reservation, Wyo.*

*v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012) (citations omitted). "If a motion to

dismiss for lack of subject matter jurisdiction . . . challenges the truth of the jurisdictional

facts alleged in the complaint, the . . . court may consider relevant evidence in order to

resolve the factual dispute." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746,

747 (Fed. Cir. 1988) (citing *Land v. Dollar*, 330 U.S. 731, 735 (1947)).

This case also involves a motion to dismiss for failure to state a claim under RCFC

12(b)(6). The standards for dismissal under RCFC 12(b)(6) are well-settled. To avoid

dismissal under RCFC 12(b)(6), "a complaint must allege facts 'plausibly suggesting (not

merely consistent with)' a showing of entitlement to relief." *Mathews v. United States*,

750 F.3d 1320, 1322 (Fed. Cir. 2014) (quoting *Kam-Almaz v. United States*, 682 F.3d

1364, 1367 (Fed. Cir. 2012)). When deciding a motion to dismiss for failure to state a

claim upon which relief may be granted, the court "must accept as true all the factual

allegations in the complaint." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378

(Fed. Cir. 2001).

### B.    Jurisdiction

Jurisdiction is a threshold matter because a case cannot proceed if a court lacks

jurisdiction to hear it. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Subject

matter jurisdiction may be challenged at any time by the parties or by the court sua

sponte. *Id*. at 506.

The Tucker Act allows this court "to render judgment upon any claim against the

United States founded either upon the Constitution, any Act of Congress or any

regulation of an executive department, or upon any express or implied contract with the

United States." 28 U.S.C. § 1491(a)(1). Specifically, the Tucker Act provides that this

Court "shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 [the Contract Disputes Act]." 28 U.S.C. § 1491(a)(2). "When a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation . . . the trial court at the outset shall determine . . . whether the Constitutional provision, statute, or regulation is one that is money-mandating." *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (en banc in relevant part).

With regard to the Contract Disputes Act of 1978,[17] the Court of Federal Claims has "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41." 28 U.S.C. § 1491(a)(2). CDA regulates "dispute[s] concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under" the CDA. 28 U.S.C. § 1491(a)(2).

## C. Statute of Limitations

Claims under the Tucker Act are subject to the six-year statute of limitations set forth in 28 U.S.C. § 2501.[18] "A claim under the Tucker Act accrues as soon as all the events have occurred that are necessary to enable plaintiff to bring suit." *Fredericksburg*

---

[17] Pub. L. No. 95-563, 92 Stat. 2383, codified at 41 U.S.C. §§ 7101-7109.

[18] "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition is filed within six years after such claim accrues first." 28 U.S.C. § 2501.

*Non-Profit Hous. Corp. v. United States*, 113 Fed. Cl. 244, 251 (2013) (citing *Goodrich v. United States*, 434 F.3d 1329, 1333 (Fed. Cir. 2006).

The CDA "contains a one-year statute of limitations that applies to appeals to this court from the final decisions of contracting officers." *Uniglobe Gen. Trading & Contracting Co., W.L.L. v. United States*, 115 Fed. Cl. 494, 505 (2014) (citing 41 U.S.C. § 7104(b)(3)[19]). The one year statute of limitations is jurisdictional. *See* 41 U.S.C. § 7103(g) ("The contracting officer's decision on a claim is final and conclusive and is not subject to review by any forum, tribunal, or Federal Government agency, unless an appeal or action is timely commenced as authorized by this chapter"); *Inter-Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1365–66 (Fed. Cir. 2002) ("Although characterized as a statute of limitations, the filing period[ ] established by ... the CDA [is] 'jurisdictional in nature,' for [it] operate[s] as [a] limit[ ] on the waiver of sovereign immunity by the Tucker Act, which otherwise entitles a contractor to sue the government in the Court of Federal Claims") (citations and internal quotation marks omitted).[20]

---

[19] "A contractor shall file any action . . . within 12 months from the date of receipt of a contracting officer's decision under section 7103 of this title." 41 U.S.C. § 7104(b)(3).

[20] "The one-year period within which to challenge a contracting officer's final decision in the Court of Federal Claims begins to run from the 'date of the receipt by the contractor of the decision.'" *Int'l Air Response v. United States*, 302 F.3d 1363, 1366 n. 2 (Fed. Cir. 2002) (quoting 41 U.S.C. § 609(a)(3) the predecessor to § 7104(b)). "When a contracting officer fails to issue a final decision on a contractor's claim within the required time period—generally, sixty days after receipt of the claim—the claim is deemed denied for the purposes of seeking review in this court." *Uniglobe Gen. Trading & Contracting Co., W.L.L.* 115 Fed. Cl. at 505–06 (citing 41 U.S.C. § 7103(f)(5))

III.   **DISCUSION**

The court will first address whether it has subject matter jurisdiction to hear

plaintiff's claims. Thereafter, the court will address whether the regulations plaintiff

claims were violated are money-mandating.

### A.   No Claims Brought by Plaintiff are Regulated by the Contract Dispute Act

To the extent that the plaintiff relies on the CDA to establish this court's

jurisdiction, this case must be dismissed because the only contracts plaintiff references

are not regulated by the CDA. Specifically, the court finds that neither the decision to

disqualify the plaintiff as an approved TSP nor the CBLs the plaintiff relies upon are

subject to the CDA.

"The Federal Circuit has observed for many years that the CDA 'does not cover all

government contracts.'" *Bailey v. United States*, 46 Fed. Cl. 187, 210 (2000) (quoting

*Coastal Corp. v. United States*, 713 F.2d 728, 730 (Fed. Cir. 1983)). The CDA regulates

procurement contracts that have "a buyer-seller relationship and an expenditure of

government funds." *Institut Pasteur v. United States*, 814 F.2d 624, 627 (Fed. Cir.

1987).[21] Generally, "courts have refused to stretch the language of the CDA to cover

contracts that do not arise from a typical 'acquisitive' relationship and the expenditure of

appropriated funds or some other exchange of recognized value." *Lublin Corp. v. United*

---

[21] The CDA only "applies to any express or implied contract  . . . made by executive agency for (1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair, or maintenance of real property or (4) the disposal of personal property." 41 U.S.C. § 7102(a)

*States*, 84 Fed. Cl. 678, 683 (2008); *see also Arbitraje Casa de Cambio v. United States*, 79 Fed. Cl. 235, 240 (2007). In other words, a procurement contract is "the acquisition by purchase, lease or barter, of property or services for the direct benefit or use of the Federal Government." *Wesleyan Co., Inc. v. Harvey,* 454 F.3d 1375, 1378 (Fed. Cir. 2006) (citing *New Era Constr. v. United States*, 890 F.2d 1152, 1157 (Fed. Cir. 1989)).

Among the services the government can contract for are transportation services. However, not all transportation contracts are regulated under the CDA. In order to obtain transportation services, the government can create commercial bills of lading, government bills of lading, or tender agreements pursuant the Interstate Commerce Act ("ICA") sections 49 U.S.C. §§ 10721 and 13712.[22] Alternatively, the government can make transportation contracts that will be governed by the FAR. *See* FAR 47.000(a)(2) ("Transportation and transportation services can be obtained by acquisition subject to the FAR *or* by acquisition under 49 U.S.C. § 10721or 49 U.S.C. § 13712 [ICA].") (emphasis added).

The contractual relationship between the plaintiff and the government in this case were based on CBLs. The Federal Circuit has made clear that CBLs are not contracts governed by the CDA when alternative forms of redress are available.  In *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014 (Fed. Cir. 1995), the Circuit explained that "Congress did not intend the general provisions of the Contract Disputes Act to supplant the pre-existing system of administrative review specifically designed for transportation

---

[22] Interstate Commerce Act of 1887, Pub. L. 104-88.

services subject to Section 3762." *Id.* at 1018; *see also* FAR 47.000(a)(2) ("FAR does not regulate the acquisition of transportation or transportation-related services when the bill of lading is the contract."). The Federal Circuit has thus held that "Congress intended to have the ICA govern all actions seeking the payment of money for the charges owed on contracts for transportation services between common carriers and the government." *Inter-Coastal Xpress, Inc.,* 296 F.3d at 1366; *see also Allstar Mayflower, LLC v. United States*, 93 Fed. Cl. 169, 171 (2010) ("The affirmative language of the ICA, and *Inter-Coastal*, clearly establishes that the ICA is the sole statutory authority governing jurisdiction in this Court for all charges or payments of money owed under a transportation service contract.").

In view of the foregoing, to the extent that the plaintiff is claiming that the plaintiff's CBLs and Tender Agreements generally are covered by the CDA, the argument is rejected. Thus, plaintiff's contention that "Plaintiff and Defendant had a contractual agreement" under the CDA is not supported. Pl.'s Mot. for Summ. J. at 19-20 (citing *Tex. Health Choice, L.C. v. Office of Personnel Mgmt.*, 400 F.3d 895, 898-99 (Fed. Cir. 2005)). The only contracts that the plaintiff addresses are the CBLs.[23] The government concedes that CBLs can constitute contracts, but correctly asserts (1) that the contracts are not governed by the CDA and (2) that the plaintiff's CBLs "do not confer jurisdiction to entertain Mr. Allen's claims because they have nothing to do with Mr.

---

[23] The government included two of plaintiff's in the record as exhibits. *E.g.,* Def.'s Mot. to Dismiss Ex. 1 (ECF No. 26-1 at 2-3).

Allen's allegations." Def.'s Mot. to Dismiss at 14 (ECF No. 26 at 20).[24] The government

contends that "bills of lading are not FAR contracts." Def.'s Reply at 7. The court agrees.

CBLs are not governed by the CDA under Federal Circuit precedent. Therefore, the

plaintiff cannot rely on the CDA for purposes of establishing jurisdiction with this court.

To the extent that the plaintiff claims that the decision to disqualify the plaintiff as

an approved TSP is regulated by the CDA, the claim is also without merit. Neither

becoming a TSP transporter nor being removed as a TSP transporter involve government

procurement contracts. "To recover for breach of contract, a party must allege and

establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of

the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos

Irr. and Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). As this

court has previously stated, "there is a minimum burden for a plaintiff, in asserting a

breach of contract claim, to explicitly identify the provisions and terms of the contract

that have been breached." *Gonzalez-McCaulley Inv. Grp., Inc. v. United States*, 93 Fed.

Cl. 710, 715 (2010). The plaintiff has not pointed to other contracts let alone those that

guarantee the "expenditure of appropriated funds or some other exchange of recognized

value" which would impose CDA jurisdiction over its status as a TSP. *See Lublin Corp.

v. United States*, 84 Fed. Cl. 678, 683 (2008). Therefore, the disqualification decision

---

[24] The government further cites several cases where this court had jurisdiction to review CBLs because the claims concerned "payment issues and the like." ECF No. 26 at 14 (*e.g.*, *Estes Exp. Lines v. United States*, 739 F.3d 689, 693 (Fed. Cir. 2014).

cannot give rise to a cognizable contract claim under the CDA and must be dismissed for lack of jurisdiction.

### B.      Plaintiff's Additional Contract Claims are Barred by the Statute of Limitations

Having determined that the plaintiff cannot rely on the CDA to establish jurisdiction in this court, the court now turns to whether the court could take jurisdiction to consider plaintiff's claims as traditional breach of contract claims.  Breach of contract claims under the Tucker Act are subject to the six-year statute of limitations set forth in 28 U.S.C. § 2501.  This six-year statute of limitations is an "absolute" limit on this court's ability to reach the merits of a claim. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-35 (2008). "A claim under the Tucker Act accrues as soon as all the events have occurred that are necessary to enable plaintiff to bring suit." *Fredericksburg Non-Profit Hous. Corp. v. United States*, 113 Fed. Cl. 244, 252 (2013) (citing *Goodrich v. United States*, 434 F.3d 1329, 1333 (Fed. Cir. 2006). A cause of action accrues and the statute of limitations begins to run when a plaintiff knows or should know the facts about the harm done to the plaintiff. *United States v. Kubrick*, 444 U.S. 111, 123 (1979); *Applegate v. United States*, 25 F.3d 1579, 1581-84 (Fed. Cir. 1994); *Kennedy v. United States*, 138 Fed. Cl. 611, 617 (2018). With a "breach of contract claim" the claim accrues when the plaintiff "should have known that it had been damaged by the government's breach." *Adriadne Fin. Serv. Pty. Ltd. v. United States*, 133 F.3d 874, 878 (Fed. Cir. 1998). Plaintiff filed his complaint with this court March 31, 2017. Therefore, the court

would only have jurisdiction to consider a breach of contract claim if the breach accrued on or after March 31, 2011.

Plaintiff makes two arguments for why the complaint was filed within the statute of limitations. Although plaintiff admits that the "[p]laintiff's damages occurred on March 8, 2010" the plaintiff contends that the claim did not accrue until after the government rendered a final decision on the plaintiff's CDA contract claim. Pl.'sMot. for Summ. J. at 15 (ECF No. 29 at 22). The plaintiff focuses on the 2016 decision rejecting the CDA claim as the final date for determining whether there was a breach. In a similar vein, the plaintiff argues that a breach claim based on plaintiff's suspension from the TSP program did not accrue until the plaintiff's administrative appeal was finally denied on May 4, 2012. Pl. Amend. Compl. ¶ 28.

The government argues in response that the plaintiff's claims accrued, if at all, in 2010, when plaintiff was suspended from the TSP program. Def.'s Reply at 2. The government argues that any breach claim had to have arisen in 2010 because the plaintiff's "allegations focus on events occurring between February and October 2010." *Id* at 3. The government contends that the plaintiff's choice "to pursue administrative remedies to challenge the October 20, 2010 decision did not toll the statute of limitations." Def.'s Mot. to Dismiss at 21.[25]

---

[25] The government further notes that the plaintiff's argument that the claim did not accrue until after the decision final in 2016, is "belied by the fact that [the plaintiff] filed a lawsuit in September 2012 in the District of Colorado (D. Colo. 12cv01577-MSK-BNB) making similar allegations." Def.'s Reply at 6.

The court agrees with the government.  To the extent that the government violated any contract regarding plaintiff's right to operate as a TSP that breach occurred in 2010 when plaintiff was suspended from the TSP program. The only contracts that the plaintiff had at that time were the CBLs which the plaintiff claims the government violated by (1) "acting outside their authority and placing plaintiff in nationwide non-use" and (2) by "circulating a secret government memo advising all government installations . . . that Plaintiff was being secretly placed on non-use status." Pl. Amend. Compl. ¶¶ 33-35.

Plaintiff's claim that the 6- year statute of limitations was tolled because plaintiff pursued some administrative remedies is without merit. The  Federal Circuit has held that "a plaintiff's invocation of a permissive administrative remedy does not prevent the accrual of the plaintiff's cause of action, nor does it toll the statute of limitations pending the exhaustion of that administrative remedy." *Martinez v. United States*, 333 F.3d 1295, 1304 (Fed. Cir. 2002); *Mendez v. United States*, 135 Fed. Cl. 131, 135 (2017) ("The pursuit of administrative remedies only delays claim accrual when those remedies are mandatory prerequisites to suit."). Only when "Congress expressly requires exhaustion of administrative remedies before suit is brought" is exhaustion a prerequisite to a claim's accrual. *Martinez*, 333 F.3d at 1305; *see also Rollock Company v. United States*, 115 Fed. Cl. 317, 330-31 (2014) ("[T]he Tucker Act does not require exhaustion of *permissive* administrative remedies before bringing a suit in this court, but it does require exhaustion of *mandatory* administrative remedies."); *Dubsky v. United States*, 98 Fed. Cl. 703, 707 (2011) ("A plaintiff's use of permissive administrative remedies . . . which is not a prerequisite to this Court's jurisdiction, does not toll the statute of limitations or create a

separate cause of action for review of the administrative decision"). This court has

rejected the application of tolling the six year statute of limitations while plaintiffs pursue

administrative remedies when the suit "seeks damages for breach of contract." *Mendez*,

135 Fed. Cl. at 136 (holding that administrative remedies "were not prerequisites to the

filing of a breach of contract suit in this court"). Plaintiff's pursuit of administrative

remedies was not mandatory for plaintiff's contract claim before this court. For these

reasons plaintiff's claim for damages for breach of contract based on the plaintiff's

suspension from the TSP program and SDDC's actions in connection with that

suspension are barred by the six year statute of limitations set in 28 U.S.C. § 2501.

**C.     This Court Does Not Have Jurisdiction to Hear Plaintiff's Claim
        Alleging Violation of Regulations Because Those Regulations are Not
        Money-Mandating**

The court also finds for the reasons that follow that plaintiff's claim for damages

based on SDDC's alleged mistakes in suspending plaintiff from the TSP program on the

grounds that the SDDC's actions violated 48 C.F.R. § 9.402(b) must be dismissed.

Section 9.402(b) reads: "the serious nature of debarment and suspension requires that

these sanctions be imposed only in the public interest for the Government's protection

and not for the purposes of punishment." This FAR provision is not a money-mandating

regulations and nor are the SDDC suspension rules either.

The Tucker Act "is only a jurisdictional statute[,] it does not create *any* substantive

right enforceable against the United States for damages." *NY and Presbyterian Hosp. v.
United States*, 881 F.3d 877, 881 (Fed. Cir. 2018) (emphasis added in original) (citation

omitted). Therefore, "[w]hen a complaint is filed alleging a Tucker Act claim based on a

Constitutional provision, statute, or regulation, the trial court at the outset shall determine

. . . whether the Constitutional provision, statute, or regulation is one that is money-

mandating." *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (en banc in

relevant part). The "money-mandating source of substantive law may be express or

implied." *NY and Presbyterian Hospital*, 881 F.3d at 881. But it does not include claims

that "fall under another head of jurisdiction, such as a contract with the United States."

*Eastport Steamship Corp. v. United States*, 178 Ct. Cl. 599, 607 n.7 (1967); *see United*

*States v. Testan*, 424 U.S. 392, 400 (1976) (holding that when the plaintiffs neither "rest

their claims upon a contract[, nor] . . . seek the return of money paid by them to the

Government[,] . . . [i]t follows that the asserted entitlement to money damages depends

upon whether any federal statute 'can fairly be interpreted as mandating compensation by

the Federal Government for the damage sustained'") (internal citation omitted).

In order to be money-mandating, the statute or regulation must be "'reasonably

amenable to the reading' that it is money mandating." *Adair v. United States*, 497 F.3d

1244, 1250 (Fed. Cir. 2007) (quoting *United States v. White Mountain Apache Tribe*, 537

U.S. 465, 473 (2003)). Whether a statute or regulation can be read reasonably to be

money-mandating "under the Tucker Act generally turns on whether the government has

discretion to refuse to make payments under that statute." *ARRA Energy Co. I. v. United*

*States*, 97 Fed. Cl. 12, 19 (2011). For example, if a statute makes "use of the word 'shall'

to require payment of money or damages, the statute is likely money-mandating. *See*

*Greenlee Cty. v. United States*, 487 F.3d 871, 877 (Fed. Cir. 2007) (citing *Agwiak v.*

*United States*, 347 F.3d 1375, 1380 (Fed. Cir. 2003) ("We have repeatedly recognized

that the use of the word 'shall' generally makes a statute money-mandating.")). Money-mandating statutes also include statutes and regulations "(1) that provide 'clear standards for paying' money to recipients; (2) that state the 'precise amounts' that must be paid; or (3) as interpreted, compel payment on satisfaction of certain conditions." *Samish Indian Nation v. United States*, 419 F.3d 1355, 1364 (Fed. Cir. 2005) (citing *Perri v. United States*, 340 F.3d 1337, 1342-43 (Fed. Cir. 2003)).

Plaintiff cites several provisions of FAR subpart 9.4 as sources of money-mandating law for his claim that the SDDC wrongfully disqualified X3 from the SDDC TSP program. In past cases where plaintiffs have relied on FAR 9.4, this court only had jurisdiction to the extent that claims arose under the court's bid protest jurisdiction 28 U.S.C. § 1491(b)(1).[26] *See e.g.*, *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009). Here, the plaintiff's claim is not a bid-protest claim but is instead a claim under 28 U.S.C. § 1491(a)(1). Pl.'s Amend. Compl. ¶ 7.  Furthermore, the language contained in the FAR §§ 9.402(b) and 9.407-4(b), upon which the plaintiff relies, does not have a clear standards for paying money, no precise amounts that must be paid in the event of a violation, and no language compels payment on satisfaction of any conditions.

Moreover, disqualification, debarment, and suspension decisions have been expressly described as "administrative actions" that do not give rise to money damages. *See Caiola v. Carroll*, 851 F.2d 395, 397 (D.C. Cir. 1998) ("Debarment is an

---

[26] The Court of Federal Claims is authorized "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract . . . or [to] any alleged violation of a statute or regulation in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1).

administrative action which excludes nonresponsible contractors from government

contracting."). As administrative actions, Federal district courts have jurisdiction to

review debarment and suspension decisions under the Administrative Procedure Act

("APA"), 5 U.S.C. § 702.[27] *See Friedler v. Gen. Servs. Admin.*, 271 F. Supp. 3d 40, 52

(D.D.C. 2017) (reviewing a debarment decision made pursuant to FAR 9.4 under the

Administrative Procedure Act). It is well settled that the APA does not "mandate money

damages" and cannot "provide the court with a basis for jurisdiction." *Visconi v. United*

*States*, 108 Fed. Cl. 344, 350 (2012); *see Stroughter v. United States*, 89 Fed. Cl. 755,

763 (2009) ("Federal district courts – not the Court of Federal Claims – are the proper

fora for APA actions."). "[T]he APA is not a jurisdictional statute and does not confer

jurisdiction on a court not already possessing it." *Nat'l Corn Growers Ass'n v. Baker*, 840

F.2d 1547, 1559 (Fed. Cir. 1988). Accordingly, plaintiff's claim for money-damages

based on violations of the FAR disbarment provisions must be dismissed for lack of

jurisdiction.

Although plaintiff does not argue that the SDDC Regulations are money-

mandating, because they are at the core of plaintiff's objections, the court has examined

them as well. Similar to the FAR regulations, the court finds that the SDDC regulations

are also not money-mandating. The regulations make no mention of money damages as a

form of redress. There are no standards for paying money, and there are no precise

---

[27] "A person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

amounts that must be paid. Therefore, the court concludes, that all of the plaintiff's statutory and regulatory claims based on the FAR and SDDC regulations are not money-mandating and must be dismissed pursuant to RCFC 12(b)(1).

## CONCLUSION

For the reasons stated above, the government's motion to dismiss all three counts of the plaintiff's complaint for lack of subject matter jurisdiction is **GRANTED**. The plaintiff's motion for summary judgment (ECF No. 29) on Counts I, II, and III is **DENIED as MOOT**.  Plaintiff's motion for default judgment (ECF No. 32) is also **DENIED as MOOT**. The government's motion to dismiss the complaint for failure to state a claim and motion for leave to file sur-reply (ECF No. 33) are **DENIED as MOOT.**  The clerk is directed to enter judgment accordingly. No costs.

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge